*Attorney Grievance Commission of Maryland v. Natasha Veytsman Rossbach,* AG No. 15, September Term, 2022. Opinion by Biran, J.

**ATTORNEY MISCONDUCT – DISCIPLINE – INDEFINITE SUSPENSION –** Respondent Natasha Veytsman Rossbach violated Maryland Attorneys' Rules of Professional Conduct 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4(a) (Communication), 19-301.5(a) (Fees), 19-301.16(d) (Declining or Terminating Representation), 19-308.1(a) and (b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct). These violations arose from Ms. Rossbach's conduct in two client matters, whereby Ms. Rossbach failed to take meaningful action to advance the clients' cases, failed to communicate with the clients, and failed to appear for scheduled meetings. In addition, in connection with Bar Counsel's investigations, Ms. Rossbach failed to respond to requests for information and made knowingly false statements to Bar Counsel. Given these violations and the existence of several aggravating factors, the Supreme Court of Maryland indefinitely suspended Ms. Rossbach from the practice of law.

IN THE SUPREME COURT

OF MARYLAND*

AG No. 15

September Term, 2022

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

NATASHA VEYTSMAN ROSSBACH

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

Opinion by Biran, J.

Filed: August 31, 2023

* At the November 8, 2022 general election, the
voters of Maryland ratified a constitutional
amendment changing the name of the Court of
Appeals of Maryland to the Supreme Court of
Maryland. The name change took effect on
December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

On August 22, 2022, the Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "PDRA") alleging that Respondent Natasha Veytsman Rossbach violated the following Maryland Attorneys' Rules of Professional Conduct ("MARPC")[1]: 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.5(a) (Fees), 1.15(a) and (c) (Safekeeping Property), 1.16(d) (Declining or Terminating Representation), 8.1(a) and (b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct).

This Court designated the Honorable Sherrie R. Bailey of the Circuit Court for Baltimore County to serve as the hearing judge. Petitioner served Ms. Rossbach with the PDRA on September 22, 2022, and with discovery requests on October 20, 2022. Ms. Rossbach did not file an answer to the PDRA, prompting Petitioner to file a motion for order of default on October 25, 2022. On October 26, 2022, the hearing judge issued an Order of Default against Ms. Rossbach, which stated that it was:

> ORDERED, that an Order of Default be entered against [Ms. Rossbach] … for failure to respond to the [PDRA] within the time permitted …; and it is further
>
> ORDERED, that the Clerk shall issue a notice to [Ms. Rossbach] at her last known address informing her that the Order of Default has been entered and that she may move to vacate the Order within thirty (30) days after entry; and it is further

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct, which employed the numbering format of the American Bar Association Model Rules, were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified without substantive modification in Title 19, Chapter 300 of the Maryland Rules. For ease of reference and comparison with our prior opinions and those of other courts, we will refer to the MARPC using the numbering of the model rules, as permitted by Maryland Rule 19-300.1(22).

ORDERED, that a hearing shall be held in this matter on December 7, 2022 at 9:00 a.m., at which time the Petitioner shall be permitted to present such evidence as it deems necessary to allow the [hearing judge] to carry out her assigned function as set forth in Maryland Rule 19-727.

On the same date, the hearing judge also issued a separate notice to Ms. Rossbach, as required under Maryland Rule 2-613(c), informing her that she could move to vacate the Order of Default within 30 days of its entry. The notice also referenced the specific requirement under Maryland Rule 2-613(d) that the motion to vacate "shall state the reasons for the failure to plead, as well as the legal and factual basis for the defense to the claim." On November 28, 2022, Ms. Rossbach filed a belated motion to vacate the Order of Default, in which she did not provide any support for her motion, as required under Rule 2-613(d).

The evidentiary hearing went forward on December 7, 2022. Deputy Bar Counsel was present on behalf of Petitioner, and Ms. Rossbach attended telephonically. The hearing judge first addressed Ms. Rossbach, who had called the court that morning to request a postponement because she was not feeling well. Ms. Rossbach stated that she had been hoping to attend the hearing in person but was experiencing severe symptoms from a medical condition, and that she had been in and out of the hospital for the past few months. The hearing judge told Ms. Rossbach that her staff had made attempts to contact her by email and phone to schedule the evidentiary hearing, but that Ms. Rossbach had not responded to her staff's inquiries. Petitioner objected to the postponement because the matter was in default status due to Ms. Rossbach's failure to participate up to that point.

2

Petitioner opposed Ms. Rossbach's motion to vacate the Order of Default for failure to satisfy the requirements of Rule 2-613(d).

The hearing judge denied Ms. Rossbach's postponement request and her motion to vacate the Order of Default. Petitioner then requested that "the Court deem the averments in the [PDRA] be admitted pursuant to Rule 2-613(f) and 2-323(e)." The hearing judge replied, "All right." Petitioner next explained that Ms. Rossbach had not responded to its requests for admissions and had not requested additional time to respond; therefore, Petitioner stated, "those admissions should be deemed admitted." Petitioner introduced the requests for admissions as Exhibit 1.

The hearing judge allowed Ms. Rossbach to present mitigating factors without objection from Petitioner. Ms. Rossbach told the hearing judge about her medical problems, her contentious divorce, her precarious financial condition which prevented her from retaining counsel to represent her in the case, and other challenges with which she had been struggling.

The hearing judge issued Findings of Fact and Conclusions of Law on January 23, 2023. Neither Petitioner nor Ms. Rossbach filed any exceptions, and Petitioner recommended that Ms. Rossbach be indefinitely suspended from the practice of law.

On February 16, 2023, the Clerk of this Court issued a notice directing Ms. Rossbach to notify the Clerk and Bar Counsel whether she intended to present oral argument. The notice advised that Ms. Rossbach's failure to respond "may constitute a waiver of oral argument." On March 28, 2023, the Clerk issued an updated notice informing the parties that the case would proceed without oral argument, because Ms.

3

Rossbach had not replied to the initial notice, thereby waiving oral argument, and because Petitioner had affirmatively waived oral argument.

For the reasons stated below, we conclude that Ms. Rossbach violated Rules 1.1, 1.3, 1.4(a), 1.5(a), 1.16(d), 8.1(a) and (b), and 8.4(a), (c), and (d), and determine that an indefinite suspension is the appropriate sanction.

## I

## The Hearing Judge's Findings of Fact

We summarize here the hearing judge's findings of fact, which were consistent with the factual averments contained in the PDRA.

### *Background*

Ms. Rossbach was admitted to the Maryland Bar on June 19, 2002. During the period relevant to this matter, Ms. Rossbach maintained an office for the practice of law in Baltimore County, Maryland.

### *Representation of James Kukin*

In 2008, Ms. Rossbach represented James Kukin in a Chapter 7 bankruptcy case in the Baltimore Division of the United States Bankruptcy Court for the District of Maryland. Ms. Rossbach obtained a discharge on Mr. Kukin's behalf in that case. In November 2019, Mr. Kukin retained Ms. Rossbach to represent him in connection with a second Chapter 7 bankruptcy. Mr. Kukin agreed to pay a flat fee of $1,600 for the representation, as well as a $300 filing fee. He paid Ms. Rossbach the $1,600 flat fee in two installments, both of which Ms. Rossbach failed to deposit into an attorney trust account until earned.

In January 2020, Ms. Rossbach met with Mr. Kukin and advised him to stop using his credit cards and recommended that he wait until March 2020 to reevaluate the possibility of filing for bankruptcy. Between March and October 2020, Ms. Rossbach failed to respond to Mr. Kukin's attempts to contact her about the status of his case.

On November 9, 2020, Ms. Rossbach's assistant called Mr. Kukin to convey that Ms. Rossbach would meet him at her office that afternoon at 2:00 p.m. She then told Mr. Kukin that he would need to meet her (the assistant) at a liquor store in Catonsville to pay the $300 filing fee prior to the meeting. Mr. Kukin refused and stated that he would pay the fee at the meeting with Ms. Rossbach. However, when Mr. Kukin went to Ms. Rossbach's office for the 2:00 p.m. meeting, Ms. Rossbach failed to appear. When Mr. Kukin called Ms. Rossbach, she indicated that he should retain new counsel. Although Ms. Rossbach did not take any action on behalf of Mr. Kukin, she failed to refund any portion of the $1,600 fee paid by Mr. Kukin.

On November 10, 2020, Mr. Kukin retained new counsel. He paid a $2,000 flat fee for that representation. On November 11, 2020, new counsel prepared and filed a Chapter 7 bankruptcy petition on Mr. Kukin's behalf. Mr. Kukin received a bankruptcy discharge on February 22, 2021.

On October 29, 2020, Mr. Kukin filed a complaint with Bar Counsel concerning Ms. Rossbach's representation of him in connection with his second bankruptcy. On November 18, 2020, Bar Counsel emailed Ms. Rossbach a copy of Mr. Kukin's complaint and requested a response by December 11. Ms. Rossbach failed to respond. On January 8, 2021, Bar Counsel sent Ms. Rossbach a copy of its November 18 correspondence by first

class mail and certified mail, and requested a response by January 25, 2021. On January 11, 2021, Ms. Rossbach requested an extension of time to respond to the complaint. Bar Counsel granted an extension through February 1. Ms. Rossbach requested a second extension on February 2, which Bar Counsel granted, giving Ms. Rossbach until March 8 to respond. On March 10, Ms. Rossbach requested an additional extension through March 12, which Bar Counsel granted.

Ms. Rossbach provided her response to Mr. Kukin's complaint to Bar Counsel on March 12, 2021. In it, Ms. Rossbach stated:

> I reviewed hundreds of pages of [Mr. Kukin's] business documents, credit reports, researched Maryland Judiciary Case Search, Land Records and potential Liens, and potential equity in his real estate, along with analyzing his assets and liabilities. Beyond the research I conducted, I advised him that I needed to determine whether his business and personal assets and liabilities would have a negative impact or may potentially impair his ability to file another Chapter 7 Bankruptcy.

> During our meeting on November 13, 2019, Mr. Kukin advised me that he has used his credit cards to buy Luxury Goods, and was still regularly using his credit cards, in addition to the massive Cash Advances he had made from his Credit Cards. I then advised him that it would be unethical for me to file a Bankruptcy Case for him at that time, due to the egregious use of his available credit and it would have been deemed Bad Faith and a Presumption of Abuse, to file a Bankruptcy Case while he was actively and frequently using his credit cards. Furthermore, he was advised that he must contact me when he was no longer using his credit cards and lines of credit, to reevaluate his situation as to whether Chapter 7 Bankruptcy was a potential option for him.

The hearing judge found that Ms. Rossbach's "statements were knowingly and intentionally false. [Ms. Rossbach] did not review hundreds of pages of documents or conduct any research on Mr. Kukin's behalf."

Additionally, Ms. Rossbach stated in her response: "I am refunding the $1,600 fee [Mr. Kukin] mentions in his Complaint, to the client immediately. I sincerely hope this matter is closed." On or about March 24, 2021, Ms. Rossbach's office contacted Mr. Kukin regarding a refund. Mr. Kukin advised that any refund should be mailed to his home address. Ms. Rossbach never provided any refund to Mr. Kukin.

Bar Counsel sent requests to Ms. Rossbach on June 3, August 5, and August 19, 2021 to obtain Mr. Kukin's client file and related financial records. The August 19 letter was hand delivered by Bar Counsel's Investigator, Marc Fiedler, to Ms. Rossbach's residence. Ms. Rossbach emailed Bar Counsel on September 1, 2021, and requested an extension of time to respond. Thereafter, Ms. Rossbach failed to respond or provide any of the documents that Bar Counsel had requested.

*Representation of Josephine Desogugua*

On December 8, 2017, Josephine Desogugua retained Ms. Rossbach to represent her in connection with a Chapter 7 bankruptcy filing, and signed a retainer agreement that provided for a flat fee of $1,000 plus a filing fee of $335. On the same day, Ms. Desogugua paid $350 toward the flat fee. Ms. Rossbach failed to deposit Ms. Desogugua's funds in an attorney trust account until earned.

On December 13, 2017, Ms. Rossbach sent a letter to Ms. Desogugua's employer regarding a writ of garnishment previously served by one of Ms. Desogugua's creditors. Ms. Rossbach stated, in part:

> Please be advised this office represents Josephine Desogugua or [sic] the filing of her bankruptcy case, that will be imminently filed. Once we have

notice of automatic stay we will forward it to your attention, along with the case number.

On or about May 31, 2018, Ms. Desogugua paid an additional $500 toward the fee. Ms. Rossbach failed to deposit Ms. Desogugua's funds in an attorney trust account until earned.

On December 5, 2018, Ms. Desogugua was scheduled to meet with Ms. Rossbach. Ms. Rossbach failed to appear for the meeting. Later that evening, Ms. Rossbach called Ms. Desogugua, apologized for missing the meeting, and explained that she had been in court all day. Ms. Rossbach told Ms. Desogugua that she would contact her to reschedule the meeting. In December 2018, Ms. Desogugua paid the remaining $150 toward the fee by check. Ms. Rossbach failed to deposit Ms. Desogugua's funds in an attorney trust account until earned.

Between December 2018 and July 2019, Ms. Rossbach failed to communicate with Ms. Desogugua in any manner or take any action on her case. On or about July 31, 2019, Ms. Desogugua spoke with Ms. Rossbach by telephone. Ms. Rossbach apologized for failing to reschedule their meeting. On August 1, 2019, Ms. Desogugua wrote to Ms. Rossbach and terminated the representation. On November 29, 2019, Ms. Rossbach emailed Ms. Desogugua and stated that she would provide a formal response to Ms. Desogugua's August 1 termination letter the following week. On December 2, 2019, Ms. Desogugua sent a text message to Ms. Rossbach requesting a refund of the fees she had paid to Ms. Rossbach. Ms. Rossbach failed to respond to Ms. Desogugua's refund request at that time.

Ms. Desogugua filed a complaint with Bar Counsel on June 5, 2020. On June 24, 2020, Bar Counsel sent an email to Ms. Rossbach that attached a copy of Ms. Desogugua's complaint and requested a response by July 15, 2020. The email was returned as undeliverable. On July 21, 2020, Bar Counsel resent the letter and complaint to Ms. Rossbach by certified mail, and requested a response no later than August 4, 2020. Ms. Rossbach received Bar Counsel's letter on July 23, 2020, but failed to respond.

On November 20, 2020, Bar Counsel emailed Ms. Rossbach at the confidential address on file with the Maryland Judiciary's Attorney Information System, enclosed a copy of the prior correspondence, and requested a response to Ms. Desogugua's complaint no later than December 4, 2020. On December 2, 2020, Mr. Fiedler hand-delivered a copy of Bar Counsel's prior letters to Ms. Rossbach and requested a response no later than December 16, 2020. Ms. Rossbach acknowledged to Mr. Fiedler that she had previously received a copy of Ms. Desogugua's complaint.

On December 22, 2020, Ms. Rossbach submitted her response to Ms. Desogugua's complaint. Ms. Rossbach stated, in part:

> I believe that, it is important to note, that after having met with Ms. Desogugua, on several occasions between 2017 and 2019, to discuss the liens that were previously placed on her property and prepare the filing of her Bankruptcy Petition, I repeatedly asked her to provide me required documents to prepare filing of her Petition.
>
> …
>
> I have kept my Client informed throughout the process and did not anticipate any issues with filing the Petition and Motions to remove liens on her property, as her Petition was already signed and ready to be filed, except that I needed her to provide me more documents, complete the Credit Counseling

Course and pay the filing fee that is due upon filing, with the Bankruptcy Court.

The hearing judge found that these "statements were knowingly and intentionally false. [Ms. Rossbach] did not repeatedly ask for documents from Ms. Desogugua or keep her 'informed throughout the process.'"

In her December 22 response, Ms. Rossbach also stated that she was refunding the $1,000 fee to Ms. Desogugua immediately. Specifically, Ms. Rossbach stated in her response: "Attached is the letter, sent to [Ms. Desogugua] with the refund check." The hearing judge found that these "statements were knowingly and intentionally false. [Ms. Rossbach] did not attach a copy of the letter or refund check to her response, and as of December 22, 2020, [Ms. Rossbach] had not sent any refund to Ms. Desogugua."

On December 28, 2020, Ms. Rossbach emailed Bar Counsel and attached a cover letter that she had purportedly sent to Ms. Desogugua on December 23, 2020 that stated: "Enclosed please find a refund in the amount of $1,000.00." Ms. Rossbach failed to provide a copy of the check. As of January 19, 2021, Ms. Desogugua had not received any refund check from Ms. Rossbach. On January 19, 2021, Mr. Fiedler called Ms. Rossbach and informed her that Ms. Desogugua had not received the refund check. Ms. Rossbach replied that she would "re-issue" the check with a letter to Ms. Desogugua and provide a copy to Bar Counsel. As of February 9, 2021, neither Ms. Desogugua nor Bar Counsel had received any letter or refund check. That same day, Mr. Fiedler left a voice message for Ms. Rossbach regarding the status of the refund to Ms. Desogugua.

On February 18, 2021, Bar Counsel emailed Ms. Rossbach and requested that she provide additional documents and information no later than March 5, 2021. On February 19, 2021, Mr. Fiedler contacted Ms. Rossbach regarding the status of Ms. Desogugua's refund. Ms. Rossbach stated that the refund would be delivered to Ms. Desogugua that day. On February 19, 2021, Ms. Desogugua received a $1,000 certified check from Ms. Rossbach.

On March 15, 2021, Mr. Fiedler met with Ms. Rossbach at her home, and she provided a copy of her file in connection with her representation of Ms. Desogugua. Ms. Rossbach also provided a copy of the February 19, 2021 letter and refund check sent to Ms. Desogugua. However, Ms. Rossbach failed to fully respond to Bar Counsel's February 18, 2021 letter and to provide the financial records Bar Counsel had requested.

## II

### The Hearing Judge's Conclusions of Law

We now summarize the hearing judge's conclusions of law.

### Rule 1.1 - Competence

The hearing judge concluded that Ms. Rossbach violated Rule 1.1 in both the Kukin and Desogugua matters. The hearing judge found that, with respect to the Kukin matter, Ms. Rossbach failed to take any action on behalf of the client, failed to communicate and provide updates, and failed to appear for a scheduled meeting. With respect to the Desogugua matter, after sending one letter to the client's employer, Ms. Rossbach failed to appear for a scheduled meeting, failed to reschedule the meeting, and failed to communicate with the client or provide any updates about her case. The hearing judge also

11

found a lack of competence in both matters based on Ms. Rossbach's failure to deposit the clients' fee payments into an attorney trust account.

*Rule 1.3 - Diligence*

The hearing judge concluded that Ms. Rossbach showed a lack of diligence, in violation of Rule 1.3, in both the Kukin and Desogugua matters for the same reasons that the hearing judge found that Ms. Rossbach violated Rules 1.1 and 1.4.

*Rule 1.4 - Communication*

The hearing judge concluded that Ms. Rossbach violated Rule 1.4(a) when she failed to keep Mr. Kukin and Ms. Desogugua reasonably informed about the status of their matters and failed to respond to their requests for information. The hearing judge noted that, between March 2020 and October 2020, Mr. Kukin tried, unsuccessfully, to contact Ms. Rossbach regarding the status of his case. The hearing judge further observed that it was not until November 2020, that Ms. Rossbach's assistant scheduled a meeting between Ms. Rossbach and Mr. Kukin for which Ms. Rossbach then failed to appear.

With respect to Ms. Desogugua, the hearing judge noted that, after failing to appear for a meeting on December 5, 2018, Ms. Rossbach failed to reschedule the meeting and failed to communicate with Ms. Desogugua again until July 2019. The hearing judge further noted that, after Ms. Desogugua terminated Ms. Rossbach's representation on August 1, 2019, Ms. Rossbach did not respond until November 29, 2019, stating that she would submit a formal response the following week. On December 2, 2019, Ms. Desogugua requested a refund. The hearing judge observed that Ms. Rossbach never

submitted any further response or responded to Ms. Desogugua's request for a refund, further violating Rule 1.4(a).

The hearing judge concluded that Ms. Rossbach also violated Rule 1.4(a) and (b) when she failed to deposit both clients' funds in an attorney trust account or obtain their informed consent, confirmed in writing, to a different arrangement.

*Rule 1.5 - Fees*

The hearing judge concluded that Ms. Rossbach violated Rule 1.5(a) in both client matters by charging unreasonable fees. The hearing judge found that, although the fees may have been reasonable at the outset of the representations, they became unreasonable when Ms. Rossbach failed to perform services of value to the clients. With respect to the Kukin matter, the hearing judge observed that, after Ms. Rossbach advised Mr. Kukin to wait until March 2020 to reevaluate the possibility of filing for bankruptcy, she failed to respond over the next nine months to his requests for information and then failed to provide any services on his behalf. With respect to Ms. Desogugua's case, the hearing judge found that, after failing to appear for the December 5, 2018 meeting, Ms. Rossbach failed to reschedule the meeting or communicate further with Ms. Desogugua for approximately seven months, until July 2019. During that time, Ms. Rossbach did not perform any services on behalf of Ms. Desogugua and, shortly thereafter, Ms. Desogugua terminated the representation.

*Rule 1.15 - Safekeeping Property*

The hearing judge concluded that Ms. Rossbach violated Rule 1.15(a) and (c) in connection with the Kukin and Desogugua matters based on Ms. Rossbach's failure to

13

deposit unearned fees in trust or to obtain the clients' informed consent to a different arrangement.

*Rule 1.16 - Declining or Terminating Representation*

The hearing judge concluded that Ms. Rossbach violated Rule 1.16(d) in both the Kukin and Desogugua matters. With respect to the Kukin matter, the hearing judge noted that Ms. Rossbach had failed to refund any portion of the $1,600 unearned fee. As for the Desogugua matter, the hearing judge concluded that, after Ms. Desogugua terminated the representation in 2019, Ms. Rossbach failed to refund any portion of the $1,000 unearned fee until February 2021, approximately 18 months later.

*Rule 8.1 - Bar Admission and Disciplinary Matters*

The hearing judge concluded that Ms. Rossbach violated Rules 8.1(a) and (b) with respect to both the Kukin and Desogugua matters. Regarding Rule 8.1(a), the hearing judge concluded that Ms. Rossbach made multiple false statements to Bar Counsel. First, in her March 12, 2021 response to Mr. Kukin's complaint, Ms. Rossbach falsely stated that she reviewed hundreds of pages of business documents and conducted research on behalf of Mr. Kukin. The hearing judge found that Ms. Rossbach did not take any action to advance Mr. Kukin's case, and that her statements to the contrary were knowingly false and intended to mislead Bar Counsel. The hearing judge also concluded that, in her March 12, 2021 response, Ms. Rossbach falsely stated that she was refunding the $1,600 paid by Mr. Kukin for the representation.

With respect to the Desogugua matter, the hearing judge concluded that Ms. Rossbach falsely stated that she repeatedly asked for documents from Ms. Desogugua that

were necessary to prepare the bankruptcy petition, and that she "kept [Ms. Desogugua] informed throughout the process." The hearing judge concluded that Ms. Rossbach's statements were knowingly and intentionally false and intended to mislead Bar Counsel regarding the work she performed on behalf of Ms. Desogugua. The hearing judge also found that Ms. Rossbach falsely stated that she was refunding the $1,000 paid by Ms. Desogugua.

With respect to Rule 8.1(b), the hearing judge concluded that Ms. Rossbach violated the rule when, during the investigation of Mr. Kukin's complaint, she failed to timely respond to several letters Bar Counsel sent her between November 2020 and August 2021, or to provide the documentation requested in Bar Counsel's August 19, 2021 letter. Similarly, during the investigation of Ms. Desogugua's complaint, Ms. Rossbach violated Rule 8.1(b) when she failed to timely respond to Bar Counsel's letters dated June 24, July 21, and November 20, 2020. The hearing judge also stated that Ms. Rossbach failed to timely respond to Bar Counsel's February 18, 2021 email or provide the financial records requested.

### Rule 8.4 - Misconduct

The hearing judge concluded that Ms. Rossbach violated Rule 8.4(a) because she violated other Rules of Professional Conduct. The hearing judge also concluded that Ms. Rossbach violated Rule 8.4(c) in the Kukin and Desogugua matters when she charged and collected a fee for the representation, failed to provide commensurate services, and then failed to refund (or timely refund) the amounts paid. Additionally, the hearing judge

concluded that each of Ms. Rossbach's violations of Rule 8.1(a) constituted a violation of Rule 8.4(c).

Further, the hearing judge found that Ms. Rossbach violated Rule 8.4(d), concluding that, "[t]aken as a whole, [Ms. Rossbach's] conduct in both matters brings the legal profession into disrepute and is therefore prejudicial to the administration of justice." In particular, the hearing judge concluded that Ms. Rossbach's failure to maintain unearned client funds in trust "demonstrates a disregard for the rules pertaining to attorney trust accounts and negatively impacts the perception of the legal profession." In addition, the hearing judge concluded that Ms. Rossbach's repeated failures to respond to Bar Counsel constitute conduct prejudicial to the administration of justice.

*Mitigating Factors*

With respect to mitigating factors, the hearing judge found that Ms. Rossbach does not have any prior discipline on her record. The hearing judge noted Ms. Rossbach's statements at the evidentiary hearing concerning her medical issues, a contentious divorce she was going through, and other problems she had encountered. However, Ms. Rossbach provided no corroboration for any of these statements. The hearing judge found that Ms. Rossbach did not meet her burden to prove the existence of any other mitigating factors.

*Aggravating Factors*

The hearing judge concluded that Bar Counsel established the existence of several aggravating factors by clear and convincing evidence. The hearing judge found that Ms. Rossbach had a dishonest or selfish motive, as evidenced by her refusal to return unearned client funds and her knowing and intentional misrepresentations to Bar Counsel to conceal

16

her misconduct. The hearing judge concluded that Ms. Rossbach engaged in a pattern of misconduct by failing to communicate and to perform the services for which she was retained in two separate client matters. In each case, the hearing judge observed, Ms. Rossbach failed to act on behalf of her clients, failed to respond to their requests for information, and failed to return unearned fees. In addition, the hearing judge noted that Ms. Rossbach committed multiple offenses. Further, the hearing judge concluded that, throughout Bar Counsel's investigation, Ms. Rossbach engaged in bad faith obstruction of the proceedings by intentionally failing to comply with Bar Counsel's requests for information and making intentional misrepresentations to Bar Counsel regarding her representation of Mr. Kukin and Ms. Desogugua. In addition, the hearing judge found that Ms. Rossbach had failed to acknowledge the wrongful nature of her conduct and showed an indifference to making restitution. The hearing judge explained that, at the evidentiary hearing, Ms. Rossbach claimed that she had performed services of value for Mr. Kukin, when in fact she had not done so. The hearing judge also noted that Ms. Rossbach never refunded any of Mr. Kukin's funds. Although Ms. Rossbach did eventually provide a full refund to Ms. Desogugua, the hearing judge observed that Ms. Rossbach only did so after Ms. Desogugua filed a complaint with Bar Counsel. Finally, the hearing judge found that Ms. Rossbach, having been admitted to the Maryland Bar in 2002, has substantial experience in the practice of law.

## III

## Standard of Review

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record. The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous. We review the hearing judge's conclusions of law without deference." *Attorney Grievance Comm'n v. Hoerauf*, 469 Md. 179, 207-08 (2020) (cleaned up). Where, as here, neither party files any exceptions to the hearing judge's findings of fact, we "may treat the findings of fact as established." Md. Rule 19-740(b)(2)(A). This Court reviews *de novo* the hearing judge's conclusions of law. Md. Rule 19-740(b)(1). "This is true even where default orders have been entered by the hearing judge." *Attorney Grievance Comm'n v. Zdravkovich*, 375 Md. 110, 126 (2003).

## IV

## Discussion

We opt to treat the hearing judge's findings of fact as established under Maryland Rule 19-740(b)(2)(A). We now consider the hearing judge's conclusions of law. For the reasons stated below, we conclude that clear and convincing evidence demonstrates that Ms. Rossbach violated Rules 1.1 (Competence), 1.3 (Diligence), 1.4(a) (Communication), 1.5(a) (Fees), 1.16(d) (Declining or Terminating Representation), 8.1(a) and (b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct). We do not find that clear and convincing evidence supports the hearing judge's conclusions that Ms. Rossbach violated Rule 1.4(b) (Communication) and Rule 1.15(a) and (c) (Safekeeping

Property). We find it expedient to consider the Rule 1.15 allegations first and then proceed to analyze the remaining allegations in numerical order.

*Rule 1.15(a) and (c) (Safekeeping Property)*

Rule 1.15 provides, in pertinent part:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

…

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

The hearing judge concluded that Ms. Rossbach "violated Rule 1.15(a) and (c) in connection with her representation of Mr. Kukin and Ms. Desogugua. In both cases, [Ms. Rossbach] failed to deposit unearned fees in trust or obtain the clients' informed consent to a different arrangement." We conclude to the contrary because Bar Counsel did not introduce any evidence, nor did the hearing judge make any factual finding, that supports the conclusion that Ms. Rossbach "failed to … obtain the clients' informed consent to a different arrangement."

19

In *Attorney Grievance Commission v. Jones*, we recently confirmed that Rule 1.15(c) permits advances against unearned fees to be treated as the property of either the attorney or the client. 484 Md. 155, 2023 WL 4484971, at *23 (2023). However, we explained that "[t]he reasonable client's expectation is that advance payments belong to the client until they are earned by the lawyer and will be initially deposited in trust and withdrawn by the lawyer as they are earned. If an agreement diverges from this expectation, therefore, the lawyer must disclose those fee terms fully and in a manner that can be reasonably understood by the client." *Id.* (quoting Mont. Comm. on Ethics, Advisory Opinion 080711 (2008)). "Thus, Rule 1.15's default position is that, unless the client gives informed consent, the money is to be treated as the property of the client." *Id.* (internal quotation marks and citations omitted). We cautioned that "[an] attorney does not obtain informed consent to the deposit of an advance fee in the attorney's operating account merely by including language in the fee agreement stating that this will occur." We further explained that, "[i]n determining whether a client gave informed consent for an attorney to deposit an advance fee in an operating account, we will closely scrutinize the client's understanding of the agreement, the client's experience, the history and relationship of the attorney and client, the legal services rendered, and all other pertinent circumstances." *Id.*

The retainer agreement that Ms. Desogugua signed is in the record. In relevant part, it states:

> The undersigned [client] gives consent to the immediate deposit of funds which represent a deposit against unearned fees into the operating account of the attorney's firm, Law Offices of Natasha Veytsman Rossbach, PA. In giving this consent, the [client] is expressly advised that the firm will use all funds received in its operating account for any firm financial purposes

including the disbursement of funds directly to the owners, partners or other staff of the firm as salaries and or distributions of firm assets. The use of the funds in no way interferes with the [client]'s right to a refund of any unearned fees at the conclusion of their case.

Next to this provision, there was a line that provided for the client to note her acceptance of this term by writing her initials. The initials "JD" (presumably for "Josephine Desogugua") are handwritten on that line in Ms. Desogugua's retainer agreement.[2]

Here, the PDRA charged that Ms. Rossbach, "by her acts and omissions as set forth herein, violated," among other provisions of the MARPC, Rule 1.15(a) and (c). The acts and omissions alleged in the PDRA concerning Rule 1.15 consisted solely of the allegations that Ms. Rossbach failed to deposit the clients' payments toward their flat fees in an attorney trust account until earned. There was no factual allegation in the PDRA that Ms. Rossbach failed to obtain informed consent, confirmed in writing, from Mr. Kukin or Ms. Desogugua to deposit their advance fee payments in an account other than an attorney trust account.

As noted above, the hearing judge entered an Order of Default after Ms. Rossbach failed to file a pleading responding to the PDRA. Bar Counsel asked that the averments in

---

[2] The record does not contain a copy of a retainer agreement with respect to Ms. Rossbach's representation of Mr. Kukin.

21

the PDRA be admitted under Maryland Rules 2-613(f)[3] and 2-323(e),[4] and the hearing judge agreed, which was in keeping with Maryland Rule 19-724(c).[5] Accordingly, the hearing judge properly deemed the factual allegations contained in the PDRA – as relevant here, that Ms. Rossbach failed to deposit the clients' fee payments in an attorney trust account until earned – to be admitted.[6] However, the hearing judge did not enter a default "judgment" of liability against Ms. Rossbach, as would happen under Rule 2-613(f) in a case originally filed in a circuit court. No "judgment" is entered against a respondent in an attorney grievance case by any court other than this Court. Because this Court has original jurisdiction over attorney grievance cases, we review a hearing judge's conclusions of law *de novo*, conducting our own independent review of the record, even where the hearing

---

[3] Maryland Rule 2-613(f) provides, in relevant part: "**Entry of Judgment**. If a motion was not filed under section (d) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default that includes a determination as to the liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed."

[4] Maryland Rule 2-323(e) provides, in relevant part: "**Effect of Failure to Deny**. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted unless denied in the responsive pleading or covered by a general denial."

[5] Maryland Rule 19-724(c) provides: "**Failure to Answer**. If the time for filing an answer has expired and the attorney has failed to file an answer in accordance with section (a) of this Rule, the court shall treat the failure as a default, and the provisions of Rule 2-613 shall apply."

[6] Similarly, in Bar Counsel's requests for admissions, Bar Counsel asked Ms. Rossbach to admit that she failed to deposit the clients' various fee payments in an attorney trust account until earned. Because Ms. Rossbach failed to timely respond to Bar Counsel's requests for admissions, the hearing judge properly deemed the matters set forth in the requests for admissions to be admitted, including the facts concerning Ms. Rossbach's failure to deposit the fee payments in an attorney trust account until earned.

judge has entered an Order of Default under Maryland Rule 2-613(f). *See, e.g.*, *Zdravkovich*, 375 Md. at 126. Thus, notwithstanding the Order of Default that the hearing judge entered in this case, we must "turn our attention to whether the admitted facts were sufficient by a clear and convincing standard to warrant the hearing judge's conclusions of law." *Attorney Grievance Comm'n v. McLaughlin*, 456 Md. 172, 191 (2017).[7] *See also*

---

[7] In *McLaughlin*, after entering an Order of Default, the hearing judge in that case "found that an evidentiary hearing was unnecessary" and further found "that the admitted facts were 'sufficient by a clear and convincing standard' to justify the court's conclusions of law that McLaughlin violated [Rules] 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (e), 8.1(a) and (b), 8.4(a), (c), and (d), and [Business and Professions Article] § 10-306." 456 Md. at 186. In that case, this Court issued a *per curiam* Order disbarring McLaughlin and a month later issued an Opinion explaining the basis for that decision. *See id.* at 189-90. After conducting an independent review of the record, this Court declined to decide whether the hearing judge's conclusions of law regarding the Rule 1.15 violations were supported by clear and convincing evidence. The Court explained:

> The hearing judge found that McLaughlin violated Rule 1.15(a) when she failed to remove her earned fees from trust monies. Because we do not know what legal services she provided, or when, it is impossible to know whether or when she should have removed these funds. Therefore, we decline to reach this issue, which did not, in any event, affect our decision to disbar McLaughlin.

*Id.* at 195. With respect to the alleged Rule 1.15(e) violation, the Court stated:

> Rule 1.15(e) applies to property that comes into an attorney's possession "in the course of representing a client." If two or more persons claim an interest in the property, the lawyer is required to keep that property separate pending the resolution of the dispute. *Id.* The hearing judge found that all of Bar Counsel's averments were admitted because McLaughlin never answered the Petition, nor appeared at the hearing. For that reason, he concluded that McLaughlin had violated 1.15(e).
>
> It is not clear to us whether 1.15(e) would apply to the dispute between [the children of McLaughlin's client]. McLaughlin received the property in the course of the representation. But our review of the record does not show that anyone disputed that [the client] owned the funds, or that [the children]

23

*Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 550-51 (2014) (explaining that because "[t]he well-pleaded averments in the PDRA … were not denied" and an "Order of Default was entered in the case, and not vacated," this Court would "accept those averments as admitted," and determining, "[b]ased on the deemed admissions, … that the admitted facts are sufficient, to a clear and convincing standard, to warrant concluding that Respondent [committed the charged Rules violations]").

In *Jones*, the attorney's retainer agreement stated that the flat fee paid by the client "will be placed in Attorney's Operating Account and not his Escrow Account, [t]hus becoming property of the Attorney." __ Md. at __, 2023 WL 4484971, at *8. In addition, the agreement stated:

> By my signature below, knowing that I have the option to request that fees paid for legal representation be placed in Attorney's Escrow Account, rather than Attorney's Operating Account, and drawn from at an hourly rate of $250.00 per hour, I agree instead to the Flat Fee arrangement as described above for services rendered. Funds in the operating account, however, can be attached by creditors, spent by the Attorney or may otherwise be unavailable for immediate refund.

*Id.* at *11. The hearing judge in *Jones* concluded that, "[a]lthough this section of the retainer agreement states where the fees will be placed, and was signed by the clients, there

claimed an interest in the funds. Our cases applying 1.15(e) typically address a lawyer's failure to pay bills out of settlement funds on a client's behalf, or turn settlement funds over to a client. This rule also applies to attorney fee disputes…. There is no evidence in the record that anyone disputed McLaughlin's fee because she never notified anyone that she was taking the fee. We similarly decline to reach this issue because it does not affect our decision to disbar McLaughlin.

*Id.* at 196 (footnote omitted).

24

is no evidence that [Mr. Jones] explained the distinction between the operating account and the attorney trust account." *Id.* The hearing judge credited the testimony at the evidentiary hearing of one of the clients at issue in the case and her mother that "[Mr. Jones] never discussed this with them, and neither of them knew the difference between the two" types of accounts. *Id.* In addition, the hearing judge stated that there was "no evidence that [Mr. Jones] explained the possible risks and alternatives to the arrangement stated in the retainer agreement." *Id.*

We concluded that "there is clear and convincing evidence in the record that Mr. Jones failed to obtain informed consent from the clients … to deposit advance fee payments into his operating account." *Id.* at *25. As to the client who testified at the hearing, we based this conclusion "on the hearing judge's crediting of the testimony of [the client and her mother] that Mr. Jones never discussed the distinction between the operating account and the trust account with them, and that neither of them 'knew the difference between the two.'" *Id.* We also noted the hearing judge's finding that there was "no evidence that [Mr. Jones] explained the possible risks and alternatives to the arrangement stated in the retainer agreement." *Id.*

Here, as stated above, Petitioner did not include any factual allegations in the PDRA or in its requests for admissions concerning Ms. Rossbach's failure to obtain informed consent, confirmed in writing, from Mr. Kukin or Ms. Desogugua to the deposit of their advance fee payments in an account other than an attorney trust account. Nor did the hearing judge make any factual finding that Ms. Rossbach failed to obtain such informed consent. Petitioner did not call either Mr. Kukin or Ms. Desogugua as witnesses at the

25

evidentiary hearing, where they could have been asked whether Ms. Rossbach explained the difference between an attorney trust account and an operating account to them. It may well be that Ms. Rossbach failed to obtain informed consent from Mr. Kukin and/or Ms. Desogugua on this point, despite at least Ms. Desogugua's apparent initialing of that provision in her the retainer agreement. However, it was Petitioner's burden to show by clear and convincing evidence that there was an absence of informed consent. Petitioner failed to do so.

To be sure, this case proceeded to the evidentiary hearing in a default posture. In such cases, it often is wasteful and unnecessary to call live witnesses. *See Thomas*, 440 Md. at 550 (opining that, given the Order of Default entered by the hearing judge, "there was no apparent need for a full-blown evidentiary hearing"). That is so because, in many such cases, Petitioner can meet its burden to prove the charged violations by clear and convincing evidence based simply on the factual averments contained in the PDRA and/or on matters deemed admitted by virtue of a respondent's failure to timely respond to Bar Counsel's requests for admissions. But Bar Counsel must examine the record as it exists after an Order of Default is entered with a critical eye. If that record reveals that Bar Counsel is missing an essential element of a charged violation, if it still wishes to proceed on that charge, it cannot simply rely on the deficient record.

For the above-stated reasons, we do not conclude that Ms. Rossbach violated Rule 1.15(a) and (c).

*Rule 1.1 (Competence)*

Rule 1.1 dictates that an attorney "shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." "Incompetent representation occurs when an attorney fails to take necessary, fundamental steps in a client's case." *Attorney Grievance Comm'n v. Ambe*, 466 Md. 270, 288 (2019) (internal quotation marks and citation omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Ms. Rossbach violated Rule 1.1 in both the Kukin and Desogugua matters when she failed to appear for scheduled meetings, failed to communicate with the clients for months on end, and failed to take meaningful action to advance their cases.

We do not base our conclusion that Ms. Rossbach violated Rule 1.1 on her failure to deposit the flat fee payments provided by Mr. Kukin and Ms. Desogugua into an attorney trust account. It is well established that the failure to deposit unearned fees in an attorney trust account can violate Rule 1.1 in addition to Rule 1.15. *See, e.g.*, *Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 338 (2020). However, as discussed above, Petitioner did not prove by clear and convincing evidence that Ms. Rossbach failed to obtain informed consent from her clients to deposit the advance fee payments into an account other than an attorney trust account. For the same reason, we cannot say that Ms. Rossbach violated Rule 1.1 by failing to deposit the clients' fee payments into an attorney trust account until earned.

*Rule 1.3 (Diligence)*

Rule 1.3 requires attorneys to "act with reasonable diligence and promptness in representing a client." "The Rule can be violated by failing to advance the client's cause or endeavor[.]" *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 208 (2020) (internal quotation marks and citation omitted). "The same rationale that supports a Rule [1.1] violation can support a Rule [1.3] violation." *Id.* at 209.

We agree with the hearing judge that Ms. Rossbach violated Rule 1.3 in the Kukin and Desogugua matters for the reasons stated in reference to Rules 1.1 and 1.4.

*Rule 1.4 (Communication)*

Rule 1.4 provides:

(a) An attorney shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (g) (1.0), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

This Rule requires that attorneys "communicate with their clients and keep their clients reasonably informed of the status of their case." *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 699 (2019). Failing to do so "prevents the client from making informed decisions." *Id.*

We agree with the hearing judge's conclusion that Ms. Rossbach violated Rule 1.4(a) in both matters by failing to keep the clients reasonably informed about the status of

28

their matters and failing to respond to their requests for information. For the same reasons that we decline to find a violation of Rules 1.1 and 1.15 in connection with Ms. Rossbach's deposit of the fee payments into her firm's operating account, we decline to find that Bar Counsel proved by clear and convincing evidence that Ms. Rossbach failed to sufficiently communicate with the clients concerning the deposit of the flat fee payments and therefore do not find a violation of Rule 1.4(a) and (b) on that basis.

*Rule 1.5(a) (Fees)*

Rule 1.5 provides:

(a) An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
(8) whether the fee is fixed or contingent.

We agree with the hearing judge's conclusion that, although Ms. Rossbach's fees may have been reasonable at the outset of both matters, they became unreasonable when Ms. Rossbach failed to perform the services for which the clients agreed to pay flat fees. "The reasonableness of a fee is not measured solely by examining its value at the outset of the representation; indeed, an otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it." *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012);

*see also Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 732 (2011) (holding that an attorney's lack of competence and diligence in representing the client resulted in an otherwise reasonable fee becoming unreasonable).

In Mr. Kukin's case, Ms. Rossbach recommended that Mr. Kukin wait until March 2020 to reevaluate filing for bankruptcy, but then failed to respond to his requests for information or perform any services between March and October 2020. Mr. Kukin retained new counsel on November 10, 2020.

In Ms. Desogugua's case, Ms. Rossbach failed to appear for their December 5, 2018 meeting, failed to reschedule the meeting, and did not communicate with her or perform any services on her behalf for approximately seven months. Ms. Desogugua then terminated the representation on August 1, 2019.

*Rule 1.16(d) (Declining or Terminating Representation)*

Rule 1.16(d) provides:

> Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

We agree with the hearing judge that Ms. Rossbach violated Rule 1.16(d) in both matters. Ms. Rossbach failed to refund any portion of Mr. Kukin's $1,600 unearned fee. In Ms. Desogugua's case, Ms. Rossbach failed to refund any portion of the $1,000 unearned fee until approximately 18 months after Ms. Desogugua terminated the representation and only after she filed her complaint with Bar Counsel.

30

*Rule 8.1 (Bar Admission and Disciplinary Matters)*

Rule 8.1 provides:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

A violation of Rule 8.1(a) "will result whenever an attorney makes intentional misrepresentations to Bar Counsel." *Attorney Grievance Comm'n v. Mitchell*, 445 Md. 241, 259 (2015) (citation omitted).

Ms. Rossbach made multiple false statements to Bar Counsel in violation of Rule 8.1(a). Ms. Rossbach's March 12, 2021 response to Bar Counsel falsely stated that she reviewed "hundreds of pages of [Mr. Kukin's] business documents" and conducted research on his behalf. The hearing judge concluded that "Ms. Rossbach did not take any action to advance Mr. Kukin's case, and that Ms. Rossbach's statements to the contrary were knowingly false and intended to mislead Bar Counsel regarding the work she performed in the case." In her March 12, 2021 response, Ms. Rossbach also falsely stated that she was "refunding the $1,600 fee [Mr. Kukin] mentions in his Complaint, to the client immediately." On or about March 24, 2021, Ms. Rossbach's office contacted Mr. Kukin and asked how he would like to receive the refund. Mr. Kukin requested that the refund be mailed to his home address. Thereafter, however, Ms. Rossbach failed to provide any refund to Mr. Kukin.

Ms. Rossbach's December 22, 2020 response to Bar Counsel regarding the Desogugua matter falsely stated that Ms. Rossbach repeatedly asked Ms. Desogugua to provide "required documents to prepare filing of her Petition," and that she kept Ms. Desogugua "informed throughout the process." The hearing judge concluded that "Ms. Rossbach's statements were knowingly and intentionally false and intended to mislead Bar Counsel regarding the work performed on behalf of Ms. Desogugua." Ms. Rossbach also stated in that same response that she was "refunding the $1,000 fee to the client immediately" and that she had "attached the letter, sent to [Ms. Desogugua] with the refund check." The hearing judge found Ms. Rossbach's statements to be knowingly and intentionally false.

Ms. Rossbach violated Rule 8.1(b) in the Kukin matter by failing to timely respond to correspondence that Bar Counsel sent to her in November 2020, January 2021, and March 2021. Ms. Rossbach also failed to respond and provide the documents requested in Bar Counsel's letters dated June 3, August 5, and August 19, 2021.

Ms. Rossbach violated Rule 8.1(b) in the Desogugua matter by also failing to timely respond to several letters from Bar Counsel. Additionally, Ms. Rossbach failed to timely respond and provide the financial records requested in Bar Counsel's February 18, 2021 letter.

*Rule 8.4(a), (c), and (d) (Misconduct)*

Rule 8.4 provides, in relevant part:

It is professional misconduct for an attorney to:
(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
…
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
(d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney violates Rule 8.4(a) if they violate any other rule of professional conduct. *Hoerauf*, 469 Md. at 214.

An attorney violates Rule 8.4(c) "by retaining unearned fees without intending to earn them." *Attorney Grievance Comm'n v. Haley*, 443 Md. 657, 674 (2015) (citation omitted). "The retention of unearned fees paid by a client, alone, may constitute a violation of Rule 8.4(c)." *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 502-03 (2002) (citations omitted). Additionally, a violation of Rule 8.1(a) constitutes a violation of Rule 8.4(c). *See Attorney Grievance Comm'n v. Harris*, 403 Md. 142, 164 (2008) ("We have said that Rules 8.1(a) and 8.4(c) are violated when an attorney acts dishonestly and deceitfully by knowingly making false statements to Bar Counsel.").

"Generally, an attorney violates [Rule 8.4(d)] when an attorney's conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Hoerauf*, 469 Md. at 214-15 (cleaned up).

Having violated several other rules of professional conduct, Ms. Rossbach violated Rule 8.4(a). *Id.* at 215.

33

We agree with the hearing judge's conclusion that Ms. Rossbach violated Rule 8.4(c) in both matters when she agreed to represent Mr. Kukin and Ms. Desogugua, charged and collected a fee, and then failed to perform the services for which she was retained without refunding the fees. Ms. Rossbach also violated Rule 8.4(c) by making knowing and intentional false statements to Bar Counsel, in violation of Rule 8.1(a).

Ms. Rossbach's conduct in both matters, as described above in recounting her other violations of the MARPC, also violated Rule 8.4(d), as it "brings the legal profession into disrepute and is therefore prejudicial to the administration of justice."

## V

## Aggravating and Mitigating Factors

*Aggravating Factors*

We have listed pertinent aggravating factors in an attorney grievance case as including:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [MARPC]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018) (citation omitted).

The hearing judge found the existence of seven aggravating factors: (1) a dishonest or selfish motive, (2) a pattern of misconduct, (3) multiple offenses, (4) bad faith

34

obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, (5) refusal to acknowledge the wrongful nature of conduct, (6) substantial experience in the practice of law, and (7) indifference to making restitution. We agree with the hearing judge that these aggravating factors are present in this case.

Ms. Rossbach demonstrated a dishonest and selfish motive by making knowing and intentional misrepresentations to Bar Counsel to conceal her misconduct and by refusing to refund unearned client funds. As noted above, Ms. Rossbach failed to perform the services for which she was retained. However, when responding to Bar Counsel, she knowingly and intentionally misrepresented that she had performed a significant amount of work on behalf of both clients. Ms. Rossbach's statements to Bar Counsel that she was refunding the clients' unearned fees were also false.

Ms. Rossbach displayed a pattern of misconduct in both matters by failing to communicate with her clients, failing to appear for scheduled meetings, and failing to perform the services for which she was retained. As discussed above, Ms. Rossbach has committed multiple MARPC violations.

Ms. Rossbach engaged in bad faith obstruction of the disciplinary proceedings in both matters by failing to timely respond to Bar Counsel's letters on multiple occasions and by failing to provide Bar Counsel's requested documentation. Ms. Rossbach also made intentional misrepresentations to Bar Counsel regarding the work she performed on behalf of both clients.

35

Ms. Rossbach failed to acknowledge the wrongful nature of her conduct. In her responses to Bar Counsel to the clients' complaints, Ms. Rossbach made knowing and false statements about the work she had performed.

Ms. Rossbach also demonstrated an indifference to making restitution. Ms. Rossbach never refunded any portion of Mr. Kukin's $1,600 fee, despite her claims that she would do so. She refunded Ms. Desogugua's $1,000 fee approximately 18 months after Ms. Desogugua terminated the representation, and only after Ms. Desogugua filed a complaint with Bar Counsel.

Ms. Rossbach was admitted to the Maryland Bar in 2002 and has substantial experience in the practice of law.

*Mitigating Factors*

We have previously listed relevant mitigating factors as including

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 209 (2014) (citation omitted).

Although this matter was in default at the time of the evidentiary hearing, the hearing judge allowed Ms. Rossbach to present mitigating factors without objection from Petitioner. Ms. Rossbach discussed her health problems and her contentious divorce, among other challenges with which she had been struggling. Although Ms. Rossbach stated

36

at the evidentiary hearing that she had documentation that corroborated all her claims, she did not enter any such documentation into evidence. The hearing judge concluded that Ms. Rossbach failed to meet her burden to prove any mitigating factors other than a lack of prior discipline. We agree.

## VI

## Sanction

In deciding the appropriate sanction, "we are guided by our interest in protecting the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (internal quotation marks and citation omitted). "As a result, our purpose in deciding the appropriate sanction is not to punish the lawyer, but to protect the public, and deter other lawyers from engaging in similar misconduct." *Edwards*, 462 Md. at 711 (internal quotation marks and citation omitted). "When determining the appropriate discipline, we consider the facts and circumstances of each case and order a sanction that is commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* at 712 (internal quotation marks and citation omitted).

Bar Counsel recommends an indefinite suspension without specifying a minimum period that Ms. Rossbach must wait before applying for reinstatement. In support of its recommendation, Bar Counsel relies on *Attorney Grievance Commission v. Kirwan*. In *Kirwan*, this Court indefinitely suspended the attorney for violating Rules 1.1, 1.3, 1.4(a)(2)-(3) and (b), 1.16(d), 8.1(b), and 8.4(a) and (d). 450 Md. 447 (2016). The attorney in *Kirwan* was retained to represent a minor child in a personal injury claim against an

37

elementary school. Following execution of the retainer agreement and medical release forms, the attorney requested and received medical records and maintained contact with the client for two months. Thereafter, the attorney became unresponsive to the client's numerous attempts to contact her via phone and email, resulting in the client filing a complaint with Bar Counsel. During the investigation, the attorney failed to respond to Bar Counsel's multiple requests for information. *Id.* at 455-57.

We agree with Bar Counsel that an indefinite suspension is the appropriate sanction in this case. "Indefinite suspension ensures that [Ms. Rossbach] is not permitted to practice law until this Court is satisfied that she is able to do so in a manner that is consistent with the M[A]RPC. We have reiterated that indefinite suspension is not permanent, so [Ms. Rossbach] may apply for reinstatement under Maryland Rule 19-752." *Id.* at 467.

We decline, however, as we did in *Attorney Grievance Commission v. Green*, to set a minimum time period that must run before Ms. Rossbach may apply for reinstatement:

> It is appropriate sometimes to state a minimum period of time that an attorney who has been suspended indefinitely must wait before he or she may apply for reinstatement to the Bar. Where there is no evidence in the record bearing on the likelihood that the offending attorney may not repeat the misconduct, however, we have refrained from specifying a minimum duration for an indefinite suspension. Because there is nothing in the record plumbing the reasons for [Ms. Rossbach's] misconduct or the likelihood that recidivism is not a concern, due to [her] multiple refusals to cooperate with Bar Counsel, an open-ended indefinite suspension is appropriate. We note also in this regard that no mitigation was found by [the hearing judge]. Thus, there is no basis from which we could divine an appropriate minimum "sit-out" period.

441 Md. 80, 102 (2014) (citations omitted). Where, as here, there is nothing in the record that would allow this Court to "divine an appropriate minimum 'sit-out' period," we decline to provide one. *Id.*

## VII

## Conclusion

For the reasons discussed above, we conclude that Ms. Rossbach violated Rules 1.1, 1.3, 1.4(a), 1.5(a), 1.16(d), 8.1(a) and (b), and 8.4(a), (c), and (d). We suspend Ms. Rossbach indefinitely from the practice of law in Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST NATASHA VEYTSMAN ROSSBACH.**