*Attorney Grievance Commission of Maryland v. Marnitta Lanette King*, AG No. 27, September Term, 2023.

**ATTORNEY DISCIPLINE – SANCTION – INDEFINITE SUSPENSION**

The Court indefinitely suspended an attorney who (1) failed to keep her clients reasonably informed about the status of their cases; (2) failed to perform meaningful legal services in furtherance of their cases; (3) improperly collected a flat fee; (4) failed to recognize a conflict of interest and contributed to that conflict by filing suit against a client; and (5) failed to comply with Bar Counsel's investigations. The attorney's conduct violated Maryland Attorneys' Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Fees), 1.7 (Conflict of Interest), 1.15(a) & (c) (Safekeeping Property), 1.16(a) (Declining or Terminating Representation), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) & (d) (Misconduct). The attorney is permitted to apply for reinstatement six months from her date of suspension conditioned on her agreement to a probationary period of not less than one year that will include a practice monitor and other appropriate conditions.

IN THE SUPREME COURT

OF MARYLAND

AG No. 27

September Term, 2023

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

MARNITTA LANETTE KING

_____

Fader, C.J.,
Booth,
Biran,
Gould,
Eaves,
Harrell, Glenn T. (Senior Justice,
   Specially Assigned),
Getty, Joseph M. (Senior Justice,
   Specially Assigned),

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: July 18, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Marnitta Lanette King, a member of the Bar of this State, arising out of her separate representations of Antoneo Young and Renika Watson.

The Commission alleged that Ms. King violated the Maryland Attorneys' Rules of Professional Conduct ("MARPC") as a result of her: (1) failure to keep her clients reasonably informed about the status of their cases; (2) failure to perform meaningful legal services in furtherance of their cases; (3) improper collection of a flat fee; (4) failure to recognize a conflict of interest and contributing to that conflict by filing suit against a client; and (5) non-compliance with Bar Counsel's investigations. The Commission asserted that Ms. King's conduct violated MARPC 19-301.1 (Competence) (Rule 1.1), MARPC 19-301.3 (Diligence) (Rule 1.3), MARPC 19-301.4 (Communication) (Rule 1.4), MARPC 19-301.5(a) (Fees) (Rule 1.5(a)), MARPC 19-301.7 (Conflict of Interest) (Rule 1.7), MARPC 19-301.15(a) and (c) (Safekeeping Property) (Rule 1.15(a) & (c)), MARPC 19-301.16(a) (Declining or Terminating Representation) (Rule 1.16(a)), MARPC 19-308.1(b) (Bar Admission and Disciplinary Matters) (Rule 8.1(b)), and MARPC 19-308.4(a) and (d) (Misconduct) (Rule 8.4(a) & (d)).[1]

The hearing judge assigned to this matter found by clear and convincing evidence that Ms. King violated those provisions. The hearing judge also determined the existence of six aggravating and three mitigating factors. Ms. King filed exceptions, taking issue

---

[1] Throughout this opinion, we will use shortened references to the Rules as identified in this paragraph in the parentheticals following each rule.

with the hearing judge finding three aggravating factors and not finding three additional mitigating factors. Bar Counsel recommends disbarment. Ms. King recommends a suspension stayed in favor of a term of probation.

We will accept the hearing judge's findings of fact, concur with the hearing judge's conclusions of law, accept the mitigating and aggravating factors the hearing judge found, sustain Ms. King's exception to the hearing judge not finding the mitigating factor of absence of a dishonest or selfish motive, otherwise overrule Ms. King's exceptions, and issue a sanction of indefinite suspension with the ability to apply for reinstatement after six months. As we will explain, Ms. King's ability to apply for reinstatement is conditioned on her agreement to a probationary period of not less than one year that will include a practice monitor and other appropriate conditions.

## BACKGROUND

The allegations of misconduct against Ms. King stem from two complaints, one concerning Ms. King's representation of Antoneo Young and the other concerning her representation of Renika Watson and Keona Holmes. The complaints proceeded together before a hearing judge of the Circuit Court for Prince George's County. We will begin by summarizing the hearing judge's findings of fact, none of which were the subject of exceptions.

### A.    The Hearing Judge's Findings of Fact[2]

Ms. King was admitted to the Maryland Bar in 2001. At all relevant times, she maintained a law office in Prince George's County.

#### 1.    *Representation of Antoneo Young*

Antoneo Young, an incarcerated individual serving a 36-year sentence, retained Ms. King in December 2020. Mr. Young's mother, Veronica Young, signed the retainer fee agreement as guarantor and agreed to pay a $2,500 flat fee for Ms. King's services.

The scope of the services Ms. King agreed to provide was disputed at the hearing. The retainer fee agreement identified the scope as: "We agree to provide legal services to the defendant to include all pre-charging matters, pre-trial matters, one trial, post-trial motions and sentencing matters resulting from that respective trial." The agreement also stated that the final fee was due in full "one week before the scheduled trial." As Mr. Young had already been tried and convicted, no one contends that the description of the scope of representation in the agreement is accurate.

Mr. and Ms. Young alleged that in exchange for the $2,500 flat fee, Ms. King agreed to review Mr. Young's case and then file on his behalf, based on her assessment of what would be more advantageous, either (1) a motion for reconsideration of sentence or (2) a petition for evaluation for substance abuse treatment under § 8-505 of the Health-General Article. Ms. King, by contrast, testified that she was retained only to review Mr. Young's

---

[2] This summary contains findings of fact made in the section of the hearing judge's opinion labeled "Findings of Fact" as well as additional factual findings made in the section labeled "Conclusions of Law."

3

case file. The hearing judge found Ms. King's testimony incredible, noting that it was inconsistent with several of her prior statements, filings, and actions. The hearing judge concluded that Ms. King was retained to file either a § 8-505 petition or, in the alternative, a motion for reconsideration, and that she charged a flat fee of $2,500 for that service.

Ms. Young paid the agreed $2,500 fee in four separate installments between December 2020 and January 2021. Ms. King initially deposited each payment in her attorney trust account. However, within days of each deposit, Ms. King withdrew the entire amount as an earned fee.

After a single initial call, Ms. King did not communicate with Mr. Young in writing or schedule a subsequent call or videoconference with him.[3] At the time, due to the COVID-19 pandemic, Ms. King was permitted to contact Mr. Young only by telephone or videoconference. The hearing judge credited records reflecting that Ms. King never requested to speak with Mr. Young in either of those ways.

Ms. King did not file a § 8-505 petition, a motion for reconsideration, a post-conviction petition, or anything else on Mr. Young's behalf. Mr. Young eventually terminated the representation, and Ms. Young initiated a complaint with the Commission. In June 2021, after that complaint was filed, Ms. King issued Ms. Young a full refund.

---

[3] As reflected in an exhibit introduced at the hearing, Ms. King did have text exchanges with Ms. Young between February and April 2021 in which, among other things: (1) Ms. Young complained that Ms. King had not been in communication with Mr. Young and asked for a refund; (2) Ms. King stated that she was waiting to hear in which of Mr. Young's two cases he "wanted a reconsideration filed"; and (3) Ms. Young indicated a preference for filing a post-conviction petition instead. Ms. King did not respond to Ms. Young's final text messages, and Ms. Young testified that she was unable to reach Ms. King by phone despite several attempts.

## 2. Representation of Renika Watson and Keona Holmes

On January 11, 2018, Renika Watson and her passenger, Keona Holmes, were injured in an automobile accident when another driver, Kevin Morris, rear-ended them. Five days later, Ms. Watson and Ms. Holmes visited Ms. King's office and met with her assistant. Ms. King was not present. Both Ms. Watson and Ms. Holmes retained Ms. King to represent them in connection with their claims arising from the accident. At that time, there was no discussion about an actual or potential conflict of interest, and neither Ms. Watson nor Ms. Holmes were presented with a written conflict waiver.

The same day, Ms. King notified Mr. Morris's insurance company that she was representing Ms. Watson and Ms. Holmes. Three days later, the insurance company denied liability on the ground that Ms. Watson was contributorily negligent. Notwithstanding that assertion of Ms. Watson's liability, Ms. King continued to represent both her and Ms. Holmes, although for nearly three years she did little additional work on the matter.

On January 12, 2021, three years and one day following the accident, Ms. King filed two lawsuits. The first was filed on behalf of Ms. Watson against Mr. Morris. The second was filed on behalf of Ms. Holmes against both Ms. Watson and Mr. Morris. Both lawsuits were filed without consulting Ms. Watson or Ms. Holmes, purportedly out of concern about the statute of limitations. Nonetheless, Ms. Watson's case was ultimately dismissed for being filed one day past the statute of limitations period.[4] The hearing judge found no

---

[4] It is undisputed that Ms. Watson's case was dismissed based on missing the statute of limitations, and Ms. King has not excepted to the hearing judge's factual finding that the complaint was filed late. As a result, we will not address that finding further.

5

evidence explaining Ms. King's delay in filing suit, ostensibly missing the statute of limitations, or filing suit against her client.

The hearing judge credited testimony from Ms. Watson and Ms. Holmes that Ms. King never discussed a conflict of interest with them and did not communicate with them at all following an initial conversation soon after the accident until after she filed the lawsuits on January 12, 2021. The hearing judge did not find credible Ms. King's contrary testimony that she discussed the conflict of interest with both Ms. Watson and Ms. Holmes.

### 3. Bar Counsel's Investigations

#### a. Investigation of Ms. Young's Complaint

Ms. Young filed a complaint with the Commission on May 20, 2021. Bar Counsel requested a response to the allegations on or before June 24, 2021. Ms. King responded on July 15, 2021. Bar Counsel thereafter requested a complete client file for Mr. Young and copies of all communications with Mr. Young and Ms. Young. After obtaining and missing a series of extensions, Ms. King responded. Ms. King sat for a statement under oath in May 2022.

#### b. Investigation of Ms. Watson's Complaint

Ms. Watson filed a complaint with the Commission on June 30, 2022. Between July 13, 2022, when Bar Counsel forwarded the complaint to Ms. King with a request for a response, and at least May 15, 2023, Ms. King engaged in an extensive pattern of either delayed responses or non-responses to Bar Counsel's legitimate inquiries. The hearing judge highlighted two specific instances in which Ms. King knowingly failed to respond to Bar Counsel's demands.

6

First, after initially being uncooperative in setting a date for her statement under oath, Ms. King agreed to a date. However, she appeared "completely unprepared" for the statement, had failed to review any documents ahead of time, purported not to know or remember basic information about her legal education, credentials, and experience and her representation of Ms. Watson, and was in a moving vehicle for at least some portion of the statement.

Second, following the statement under oath, Bar Counsel requested various documents and information that Ms. King had been unable to provide during that statement. In spite of multiple instances of Bar Counsel granting extensions and Ms. King missing them, Ms. King never provided any of the additional requested documents or information except for an unsubstantiated timeline of her efforts to obtain counsel.

## B.    The Hearing Judge's Conclusions of Law

The hearing judge concluded by clear and convincing evidence that Ms. King had violated Rules 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Fees), 1.7 (Conflict of Interest), 1.15(a) and (c) (Safekeeping Property), 1.16(a) (Declining or Terminating Representation), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) and (d) (Misconduct). We will discuss the specific bases for the hearing judge's conclusions concerning each of those rules in our discussion section below.

7

## C. The Hearing Judge's Findings Concerning Mitigating and Aggravating Factors

### 1. *Mitigating Factors*

The hearing judge found that Ms. King established three mitigating factors by a preponderance of the evidence: (1) personal or emotional problems; (2) physical disability; and (3) good character or reputation.

With respect to personal or emotional problems, the hearing judge found that Ms. King had demonstrated "she was enduring serious personal issues, specifically domestic abuse." Although the hearing judge did not go into any further detail, Ms. King testified at length at the hearing about domestic violence from which she suffered during at least part of the time periods relevant to the Young and Watson matters. Ms. King testified that she was subjected to domestic abuse by her ex-husband, resulting in injuries including scars, a dislocated jaw, a ruptured bicep, a torn rotator cuff, and damage to her wrist that prevented her from being able to write for a substantial period. Ms. King testified that she obtained several protective orders against her ex-husband; that he regularly stalked her, including coming to her office "on a regular basis" to find her; that being stalked prevented her from coming to the office at times when others were not present; and that she was forced to stay at a safe house for a period of time for protection. The hearing judge credited at least some of that unrebutted testimony.

The hearing judge also found that Ms. King proved the mitigating factor of physical disability, crediting her testimony that she was unable to write for a significant period of

time and had difficulties walking because of injuries she sustained due to the domestic violence.

With respect to character and reputation, the hearing judge credited two character witnesses who testified positively about Ms. King's public service work, involvement in the community, and "dedication to helping people."

### 2. *Aggravating Factors*

The hearing judge found that Bar Counsel established the existence of six aggravating factors by clear and convincing evidence: (1) prior disciplinary history; (2) a pattern of misconduct; (3) multiple violations; (4) bad faith obstruction of the disciplinary proceeding; (5) substantial experience in the practice of law; and (6) likelihood of repetition. The hearing judge identified the following reasons supporting those findings:

- With respect to prior discipline, Ms. King had been disciplined twice before, in 2018 and 2021.

- With respect to both a pattern of misconduct and multiple violations, Ms. King exhibited "a protracted failure to adequately communicate with and keep three of her clients, Mr. Young, Ms. Watson, and Ms. Holmes, abreast about the status of her representation of them[.]"

- With respect to bad faith obstruction of the disciplinary proceeding, Ms. King delayed or failed to respond to Bar Counsel's legitimate investigatory demands.

- With respect to substantial experience in the practice of law, Ms. King had been a member of the Bar since 2001.

- With respect to likelihood of repetition, Ms. King had a history of receiving sanctions for violations of many of the same rules at issue here, and her misconduct here spanned multiple clients and matters.

## DISCUSSION

### I. THE HEARING JUDGE'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS.

"This Court has original and complete jurisdiction in attorney discipline proceedings and conducts an independent review of the record." *Attorney Grievance Comm'n v. Bonner*, 477 Md. 576, 584 (2022). "The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous or either party successfully excepts to them." *Attorney Grievance Comm'n v. Fineblum*, 473 Md. 272, 289 (2021) (quoting *Attorney Grievance Comm'n v. Ambe*, 466 Md. 270, 286 (2019)). When there are no exceptions filed, we may treat the hearing judge's factual findings as established. *Attorney Grievance Comm'n v. Wescott*, 483 Md. 111, 120 (2023); Md. Rule 19-740(b)(2)(A).

Bar Counsel did not file any exceptions and Ms. King's exceptions do not relate to the hearing judge's findings of fact. Having reviewed the record thoroughly, we will accept the hearing judge's findings of fact and treat them as established.

### II. THE HEARING JUDGE'S CONCLUSIONS OF LAW ARE SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

We assess the hearing judge's legal conclusions without deference, *Attorney Grievance Comm'n v. O'Neill*, 477 Md. 632, 658 (2022); Md. Rule 19-740(b)(1), and independently determine whether Bar Counsel established a violation of the rules by clear and convincing evidence, *Attorney Grievance Comm'n v. Silbiger*, 478 Md. 607, 617 (2022). The hearing judge concluded by clear and convincing evidence that Ms. King violated Rules 1.1, 1.3, 1.4, 1.5(a), 1.7, 1.15(a) and (c), 1.16(a), 8.1(b), and 8.4(a) and (d).

10

Upon our independent analysis, we conclude that there is clear and convincing evidence that Ms. King violated those same rules.

## A.       Rule 1.1 (Competence)

Rule 1.1 states that "[a]n attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  MARPC 19-301.1.

The hearing judge concluded that Ms. King violated Rule 1.1 in her representation of Mr. Young by "failing to advance his interest in any appreciable way."  That conclusion was based on the hearing judge's findings of fact that Ms. King had:  (1) agreed to file either a § 8-505 petition or a motion for reconsideration on Mr. Young's behalf in exchange for a flat fee of $2,500; (2) failed to file either document or anything else on Mr. Young's behalf; and (3) failed to communicate with Mr. Young at all after an initial conversation.

The hearing judge concluded that Ms. King also violated Rule 1.1 in her representation of Ms. Watson "by either failing to recognize the conflict of interest between Ms. Watson and Keona Holmes, or simply ignoring it and continuing to represent two individuals whose interests clearly did not align."  In addition, the hearing judge found that Ms. King violated Rule 1.1 when she:  (1) failed to file Ms. Watson's claim within the statute of limitations; (2) did little to advance Ms. Watson's interests for nearly three years; (3) offered no explanation for either the lengthy delay or missing the statute of limitations; and (4) filed suit against her client, Ms. Watson, on behalf of another client, Ms. Holmes.

Ms. King did not except to the hearing judge's conclusion that she violated Rule 1.1.  Based on the undisturbed findings of fact, we agree with that legal conclusion for the

11

reasons identified by the hearing judge.  *See Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 646 (2016) (failing to recognize an inherent conflict of interest fell "below the minimum standard of competence").

### B.    Rule 1.3 (Diligence)

Rule 1.3 demands that "[a]n attorney shall act with reasonable diligence and promptness in representing a client."  MARPC 19-301.3.

The hearing judge concluded that Ms. King violated Rule 1.3 in the Young matter by both failing and refusing to respond to Ms. and Mr. Young's "repeated attempts to communicate with her over a protracted period of time."

The hearing judge also concluded that Ms. King violated Rule 1.3 in the Watson matter for the same reasons as those supporting her violation of Rule 1.1 in that matter.

Ms. King did not except to the hearing judge's conclusion that she violated Rule 1.3.  Based on the undisturbed findings of fact, we agree with that legal conclusion for the reasons identified by the hearing judge.

### C.    Rule 1.4 (Communication)

Among other required communications, an "attorney shall: . . . keep the client reasonably informed about the status of the matter" and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  MARPC 19-301.4(a), (b).

The hearing judge concluded that Ms. King violated Rule 1.4 in her representation of Mr. Young by failing to attempt to meet or speak with Mr. Young after an initial

12

conversation, failing to respond to his attempts to contact her, and failing to respond to many of Ms. Young's attempts to contact Ms. King.

The hearing judge concluded that Ms. King violated Rule 1.4 in connection with her representation of Ms. Watson by failing to obtain Ms. Watson's informed waiver of a conflict of interest and failing to communicate with Ms. Watson or Ms. Holmes for nearly three years.

Ms. King did not except to the hearing judge's conclusion that she violated Rule 1.4. Based on the undisturbed findings of fact, we agree with that legal conclusion for the reasons identified by the hearing judge.

### D.     Rules 1.5(a) (Fees) & 1.15(a) & (c) (Safekeeping Property)

Rule 1.5(a) requires that "[a]n attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." MARPC 19-301.5(a). Rule 1.15(a) requires attorneys to "hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property[,]" and to keep "[c]omplete records of the account funds and of other property[.]" MARPC 19-301.15(a). And Rule 1.15(c) provides that, absent "informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred." MARPC 19-301.15(c).

The hearing judge concluded that Ms. King violated both Rule 1.5(a) and Rule 1.15(a) and (c) in connection with her representation of Mr. Young. The hearing judge

13

concluded that Ms. King violated Rule 1.5(a) by "fail[ing] to provide any appreciable services of value." That conclusion was premised on the hearing judge's factual finding that Ms. King agreed to file a § 8-505 petition or a motion for reconsideration on Mr. Young's behalf for a flat fee of $2,500. Ms. King failed to do so and failed to file anything else on his behalf. Thus, although the $2,500 flat fee was not unreasonable when charged, it became unreasonable when Ms. King failed to perform the service for which she was retained. *See Attorney Grievance Comm'n v. Gray*, 444 Md. 227, 254 (2015) (stating that a fee that is initially reasonable can become unreasonable if the attorney fails to perform the services for which the attorney was retained).

Relatedly, the hearing judge concluded that Ms. King also violated Rule 1.15(a) and (c) in the Young matter by withdrawing all $2,500 paid by Ms. Young without performing the primary service for which she had been retained, i.e., the filing of a § 8-505 petition or a motion for reconsideration. The hearing judge recognized that Ms. King "may have earned a portion of the retainer advanced to her by reviewing Mr. Young's file, [but] she would not have earned the entire amount as the representation was not completed."

A flat fee, such as the $2,500 charged to Ms. Young, is a type of advance payment, which "remains the client's property until earned by the attorney." *Attorney Grievance Comm'n v. Jones*, 484 Md. 155, 199 (2023). A flat fee cannot be fully earned until the representation is complete. *Id.* at 204. It was thus impermissible for Ms. King to transfer the entire amount of the flat fee from her attorney trust account before filing one of the documents the hearing judge found she was hired to file.

Ms. King did not except to the hearing judge's conclusion that she violated Rules 1.5(a) and 1.15(a) and (c). Based on the undisturbed findings of fact, we agree with that legal conclusion for the reasons identified by the hearing judge.

### E. Rule 1.7 (Conflict of Interest)

An attorney "shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client[.]" MARPC 19-301.7(a). An attorney may nonetheless represent a client if:

> (1) the attorney reasonably believes that the attorney will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the attorney in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

MARPC 19-301.7(b).

The hearing judge concluded that Ms. King violated Rule 1.7 in the Watson matter by representing both Ms. Watson and Ms. Holmes when she knew or should have known that they potentially had competing interests; not discussing the conflict with Ms. Watson or Ms. Holmes; and filing suit against Ms. Watson while still representing her. The hearing judge also noted that Ms. King did not obtain a written waiver of the conflict of interest, but observed, correctly, that a waiver was not a viable option here because Ms. King

15

asserted an unwaivable "claim by one client against another client" she represented "in the same litigation[.]" *See* MARPC 19-301.7(b)(3).

Here, there was "significant risk" of a conflict from the outset in representing both Ms. Watson, as the driver, and Ms. Holmes, as the injured passenger. That conflict became more obvious when the other driver's insurance company denied liability due to Ms. Watson's alleged contributory negligence. And even if Ms. King could have navigated that conflict at the outset by obtaining informed consent in writing from both clients: (1) she failed to do so; and (2) the conflict became unwaivable. *See* MARPC 19-301.7(b)(3); *Attorney Grievance Comm'n v. Olszewski*, 441 Md. 248, 267 (2015) (filing suit against one's own client is an unwaivable conflict).

Ms. King did not except to the hearing judge's conclusion that she violated Rule 1.7. Based on the undisturbed findings of fact, we agree with that legal conclusion for the reasons identified by the hearing judge.

### F. Rule 1.16(a) (Declining or Terminating Representation)

Rule 1.16(a)(1) requires an attorney who has commenced representation of a client to withdraw if "the representation will result in violation of the Maryland Attorneys' Rules of Professional Conduct[.]" MARPC 19-301.16(a)(1).

The hearing judge concluded that Ms. King violated Rule 1.16(a) in connection with her representation of Ms. Watson by not declining or terminating representation of Ms. Watson once Ms. King realized or should have realized that the representation would result in a violation of Rule 1.7.

16

Ms. King did not except to the hearing judge's conclusion that she violated Rule 1.16(a). Based on the undisturbed findings of fact, we agree with that legal conclusion for the reasons identified by the hearing judge. *See Attorney Grievance Comm'n v. Neverdon*, 473 Md. 631, 686 (2021) (holding that an attorney's "continued representation, without withdrawal, of the Clients despite the conflict of interest, in violation of [Rule] 1.7, as the hearing judge concluded, constitutes a violation of [Rule] 1.16(a)(1)").

### G.     Rule 8.1(b) (Bar Admission and Disciplinary Matters)

An attorney "shall not," subject to exceptions not relevant here, "knowingly fail to respond to a lawful demand for information from a[] . . . disciplinary authority[.]" MARPC 19-308.1(b).

The hearing judge concluded that Ms. King violated Rule 8.1(b) in connection with Bar Counsel's investigation into the Watson matter by failing to respond to lawful demands for information. Over the course of Bar Counsel's investigation, Ms. King frequently missed deadlines, even after multiple extensions; failed to provide important requested documentation; and was unprepared for her statement under oath, including professing a lack of knowledge or recollection of basic facts concerning her legal education, credentials, and experience and representation of Ms. Watson.

Ms. King did not except to the hearing judge's conclusion that she violated Rule 8.1(b). Based on the undisturbed findings of fact, we agree with that legal conclusion for the reasons identified by the hearing judge. *See Attorney Grievance Comm'n v. Rossbach*,

17

485 Md. 563, 585, 599 (2023) (finding Rule 8.1(b) violation for failing to timely respond and provide documents requested by Bar Counsel).[5]

### H.  Rule 8.4(a) & (d) (Misconduct)

Rule 8.4 provides that "[i]t is professional misconduct for an attorney to:  (a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct . . . ; [or] (d) engage in conduct that is prejudicial to the administration of justice[.]"  MARPC 19-308.4(a), (d).

The hearing judge concluded that Ms. King violated Rule 8.4(a) by violating other rules of professional conduct, as already described.  Ms. King does not except to that conclusion, and we agree with it.

The hearing judge concluded that Ms. King violated Rule 8.4(d) in connection with her representation of Ms. Watson "by failing to communicate with her for nearly three years, filing a lawsuit on her behalf without consultation and after the statute of limitations had expired, and simultaneously filing a claim against her."  The hearing judge concluded that Ms. King violated Rule 8.4(d) in connection with her representation of Mr. Young "by accepting an advance fee and not consulting with her client to define the scope of the representation and then failing to perform any work of value."  In both cases, the hearing judge concluded that Ms. King's conduct was "prejudicial to the administration of justice."

---

[5] The Commission charged Ms. King with a violation of Rule 8.1(a), but the hearing judge did not address that provision and Bar Counsel did not except.  Consequently, we will not find a violation of Rule 8.1(a).

Again, Ms. King does not except to that conclusion, and again, we agree. The conduct in which the hearing judge found Ms. King engaged "is likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court[.]" *See Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717 (2014).[6]

### III. MITIGATING FACTORS, AGGRAVATING FACTORS, MS. KING'S EXCEPTIONS, AND THE SANCTION

In an attorney discipline case, we select a sanction with the purpose of protecting the public and deterring future misconduct, not punishing the attorney. *Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 497-98 (2017). When fashioning the appropriate sanction, we evaluate each attorney grievance matter on its own merits, taking into consideration the particular facts and circumstances, including any mitigating or aggravating factors. *See Wescott*, 483 Md. at 127.

The hearing judge found the existence of three mitigating factors and six aggravating factors. Ms. King filed exceptions to the hearing judge: (1) not finding three additional mitigating factors; (2) not affording sufficient importance to one of the mitigating factors the hearing judge found; and (3) finding three of the six aggravating factors. We will address each of those exceptions as relevant below.

---

[6] The Commission charged Ms. King with a violation of Rule 8.4(c), but the hearing judge did not address that provision and Bar Counsel did not except. Consequently, we will not find a violation of Rule 8.4(c).

19

### A. Mitigating Factors

"The existence of mitigating factors tends to lessen or reduce the sanction an attorney may face." *Attorney Grievance Comm'n v. Pierre*, 485 Md. 56, 121 (2023) (alteration omitted) (quoting *Attorney Grievance Comm'n v. Johnson*, 472 Md. 491, 548 (2021)); *see also Attorney Grievance Comm'n v. Kalarestaghi*, 483 Md. 180, 242 (2023) (providing a list of recognized mitigating factors). The respondent bears the burden of establishing mitigating factors by a preponderance of the evidence. *Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 364 (2020).

As noted, the hearing judge found that Ms. King established three mitigating factors by a preponderance of the evidence: (1) personal or emotional problems; (2) good character or reputation; and (3) physical disability. We agree that the record supports all three.

Ms. King excepts to the hearing judge not finding three additional mitigating factors: (1) the absence of a dishonest or selfish motive; (2) delay in her disciplinary proceedings; and (3) remorse.

We will sustain Ms. King's exception concerning the absence of a dishonest or selfish motive. Of the violations found, the underlying conduct that is most likely to involve a dishonest or selfish motive is the conduct underlying the violations of Rules 1.5 and 1.15: accepting an unearned $2,500 fee and withdrawing it prematurely from her attorney trust account. And yet, as to that conduct specifically, the hearing judge noted "that there were no allegations of a dishonest motive." Beyond the facts related to her handling of that fee, we see nothing in the record, in any inferences that can reasonably be

20

drawn from the record, or in the hearing judge's findings and conclusions that would support a finding that Ms. King had a dishonest or selfish motive. Accordingly, we will sustain Ms. King's exception and find that she has proven by a preponderance of the evidence the mitigating factor of absence of a dishonest or selfish motive.

We will, however, overrule Ms. King's exceptions as to remorse and delay. Although Ms. King expressed some degree of remorse, admitting that she had "failed" and "disappointed" her clients, she did not even acknowledge, much less express remorse for, much of the misconduct found by the hearing judge. At the hearing, Ms. King steadfastly maintained that she had agreed only to review Mr. Young's file. As a result, she never expressed remorse for not filing anything on his behalf or for prematurely withdrawing from her trust account the money paid by Ms. Young. Ms. King also denied the extent of communication problems found by the hearing judge in both matters, maintained that she had counseled Ms. Watson and Ms. Holmes concerning her conflict of interest, and does not seem to have understood that the conflict became unwaivable. As a result, she never expressed remorse for any of that misconduct. Moreover, the hearing judge was in the best position to determine Ms. King's credibility with respect to her expressions of remorse. *See* Md. Rule 19-740(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *Attorney Grievance Comm'n v. Bonner*, 477 Md. 576, 613-14 (2022) ("We will not substitute our judgment for the judgment of the hearing judge with regard to credibility determinations."). We overrule Ms. King's exception concerning the mitigating factor of remorse.

21

As to delay, Ms. King contends that the hearing judge should have found that mitigating factor due to the delay between the initiation of the Commission's investigations and the filing of charges. To be sure, there was a somewhat substantial gap in time between the docketing of each matter and the filing of the single petition for disciplinary or remedial action that addressed both matters (two years in the Young matter and 15 months in the Watson matter). But much of that "delay" can be explained by Ms. King's own actions and the overlap of the matters. During the investigation of Ms. Watson's complaint in particular, Ms. King repeatedly failed to meet deadlines and produce records. Although some periods of delay may be attributable to Bar Counsel's office, we overrule her exception concerning the mitigating factor of delay because of the responsibility Ms. King bears for the delays overall.

We now turn to a primary focus of Ms. King's exceptions, which is her contention that the hearing judge did not give sufficient consideration to her testimony about the domestic violence she faced.[7] The hearing judge found the mitigating factor of personal or emotional problems based on Ms. King's testimony about suffering from domestic violence. However, Ms. King contends that the hearing judge should have given greater

[7] In her exceptions, Ms. King suggests that the hearing judge improperly prevented her from introducing evidence concerning the domestic violence she suffered. Specifically, Ms. King argues that the hearing judge "failed to allow [Ms. King's] witnesses to provide testimony of [her] character as it relates to how she survived and overcame domestic violence." We disagree. While the hearing judge did limit other witnesses from testifying about Ms. King's domestic violence, it was because they lacked first-hand knowledge of it. And when one of her witnesses was permitted to testify about it, that witness suggested that Ms. King's client interactions were "normal" and that she continued to "take care of her business" despite the domestic violence. And, importantly, the hearing judge permitted Ms. King to testify extensively about the domestic violence she suffered.

22

attention to that testimony. Although we agree that the hearing judge could have included more information about Ms. King's domestic violence testimony, he found that it constituted a mitigating factor, which is all that is necessary to tee her experience up for our consideration in determining an appropriate sanction. But because there seemed to be some degree of confusion at the hearing and again at oral argument concerning the proper treatment of allegations of domestic violence as a mitigating factor, we will provide some additional guidance.

Credible allegations of domestic violence, as the hearing judge clearly found to exist here, can support finding the mitigating factor of personal or emotional problems. Neither the prevalence of domestic violence nor the debilitating effects it can have on those who suffer from it can be subject to doubt.[8] We have no hesitation in recognizing that domestic violence can be a contributing factor in misconduct that leads to a violation of the MARPC. We similarly have no hesitation in recognizing that where it is a contributing factor in such misconduct, it is an appropriate mitigating factor.

---

[8] *See, e.g.*, *About Intimate Partner Violence*, Ctrs. for Disease Control (May 16, 2024), https://www.cdc.gov/intimatepartnerviolence/about/index.html [https://perma.cc/5 LAR-CP34] (discussing the personal and societal consequences of intimate partner violence including injuries, death, sustained physical and mental health problems, and risk of harmful addictive behaviors, and noting that "[p]eople from groups that have been marginalized, such as people from racial and ethnic minority groups, are at higher risk for worse consequences"); C. Nadine Wathen, Jennifer C. D. MacGregor & Barbara J. MacQuarrie, *The Impact of Domestic Violence in the Workplace*, 57 J. Occupational & Env't Med. 65, 67-68 (2015) (noting the impact of domestic violence on workers, including disrupted work history, lower incomes, physically being unable to get to work, and negative effects on work performance); *Coburn v. Coburn*, 342 Md. 244, 251-52 (1996) (discussing the problem of domestic abuse and summarizing the early legislative and executive responses thereto).

The degree to which the experience of domestic violence should be weighed in our consideration of an appropriate sanction will necessarily depend on the role it played in the misconduct at issue and whether it presents a risk going forward. As noted, our paramount concern in imposing attorney discipline is protecting the public. *Woolery*, 456 Md. at 497-98. If domestic violence played a significant role in contributing to the misconduct at issue and there is little risk of it contributing to future misconduct, that factor may play a substantial role in determining what discipline is appropriate. On the other hand, if domestic violence played a minimal role in the misconduct at issue, or if there is reason to believe it will continue to interfere with the attorney's ability to provide competent and diligent representation of clients, the public will remain at risk and, in spite of our having great sympathy for the victim, that factor may play little role in identifying an appropriate sanction. Accordingly, where an attorney contends that domestic violence was a contributing factor in alleged misconduct, hearing judges should consider evidence relating to that factor and make findings, by a preponderance of the evidence, concerning whether it has been proven, the effect it had on the misconduct at issue, and whether it is likely to contribute to future misconduct.

As applied to Ms. King, the hearing judge found that she suffered domestic violence and therefore found the mitigating factor of personal or emotional problems. The hearing judge did not make any findings concerning the degree to which domestic violence contributed to the misconduct or whether it was likely to contribute to future misconduct. In a different case, we might be inclined to return this to the hearing judge to make such findings. Here, however, Ms. King did not tie the domestic violence she suffered to any

24

particular instance of misconduct. To the contrary, she largely denied many of the allegations of misconduct in ways that are inconsistent with such an explanation. Among other things, she testified that her communication failures were not as extensive as the hearing judge found, that she never agreed to file anything on Mr. Young's behalf in return for the $2,500 flat fee, that she withdrew that fee from her trust account because she had fully earned it, and that she recognized the conflict of interest between Ms. Watson and Ms. Holmes and counseled both of them about it. On all of those points, the hearing judge found Ms. King's testimony to lack credibility. Ms. King could not and did not introduce evidence that the domestic violence she suffered contributed to misconduct she denied occurred.[9] We overrule Ms. King's exception.

In sum, we recognize the following mitigating factors: personal or emotional problems, physical disability, good character or reputation, and absence of a dishonest or selfish motive.

### B. Aggravating Factors

Aggravating factors "militate in favor of a more severe sanction." *Bonner*, 477 Md. at 608 (quoting *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 233 (2020)); *see also Attorney Grievance Comm'n v. Malone*, 482 Md. 82, 120 (2022) (providing a list of

---

[9] In a case involving allegations of incidents of domestic violence contributing to alleged misconduct, we would also expect Bar Counsel to take those allegations into account in determining how to proceed, just as it would when faced with allegations of substance use or mental health concerns. Here, perhaps due to Ms. King's discovery failures—which caused the hearing judge to grant Bar Counsel's request for sanctions and preclude Ms. King from introducing evidence other than as to her character—and refusal to cooperate with the investigation, it does not appear that the Assistant Bar Counsel assigned to this matter was aware of those allegations until the hearing.

recognized aggravating factors). Bar Counsel bears the burden of proving the existence of aggravating factors by clear and convincing evidence. *Attorney Grievance Comm'n v. Weinberg*, 485 Md. 504, 556 (2023); Md. Rule 19-727(c).

The hearing judge found by clear and convincing evidence the existence of six aggravating factors: (1) prior disciplinary history; (2) pattern of misconduct; (3) multiple violations; (4) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (5) substantial experience in the practice of law; and (6) likelihood of repetition. Ms. King excepts to three of those factors: prior disciplinary history, bad faith obstruction of the disciplinary proceeding, and likelihood of repetition. Because the record supports the hearing judge's findings, we will overrule Ms. King's exceptions.

### 1.      *Prior Disciplinary History*

The hearing judge concluded that Ms. King has a history of discipline, including an April 2018 warning for violation of Rule 1.3 and a November 2021 reprimand for violations of Rules 1.1, 1.3, 1.4(a), 1.5(a), 1.15(a), 3.4(d), 8.1(b), and 8.4(a) and (d). The record supports the hearing judge's findings with respect to this aggravating factor.

Ms. King does not dispute these incidents of prior discipline but contends that it is inappropriate to consider the November 2021 reprimand as an aggravating factor because her conduct at issue in this proceeding predated the imposition of that discipline. However, we have previously upheld the use of "prior disciplinary offense[s] as an aggravating factor, where the sanction for the prior offense was imposed after the attorney performed

26

the acts at issue in the case under review." *Attorney Grievance Comm'n v. Sperling*, 472 Md. 561, 617-18 (2021) (discussing cases). Ms. King's exception is overruled.

### 2. A Pattern of Misconduct

The hearing judge concluded that Ms. King had demonstrated a pattern of misconduct by failing to communicate with multiple clients over several years and failing to perform the services for which she was retained. The record supports the hearing judge's finding. *See Rossbach*, 485 Md. at 601 (finding this factor for failures of communication and performance).

### 3. Multiple Violations

We have found that Ms. King committed multiple rule violations. This aggravating factor is established.

### 4. Bad Faith Obstruction of the Disciplinary Proceeding

The hearing judge concluded that Ms. King engaged in bad faith obstruction for essentially the same reasons that she violated Rule 8.1(b): ignoring deadlines; providing incomplete information, if any at all; and lack of preparation for her statement under oath. The record supports the hearing judge's findings.

Without support, Ms. King broadly excepts to this finding, arguing that it "fails to meet the legal standard established by the case law." To the contrary, this Court has regularly treated repeated failures to respond timely and sufficiently to Bar Counsel's lawful requests as sufficient to satisfy the aggravating factor of bad faith obstruction. *See, e.g.*, *Attorney Grievance Comm'n v. Yeatman*, 489 Md. 211, 236 (2024) ("Respondent engaged in bad faith obstruction of the disciplinary proceedings by failing to respond to

27

several letters from Bar Counsel and requests by Bar Counsel to provide his client files in both matters." (emphasis omitted)); *Rossbach*, 485 Md. at 601-02 ("Ms. Rossbach engaged in bad faith obstruction of the disciplinary proceedings in both matters by failing to timely respond to Bar Counsel's letters on multiple occasions and by failing to provide Bar Counsel's requested documentation."). Ms. King's exception is overruled.

### 5. *Substantial Experience in the Practice of Law*

Ms. King acknowledges that the aggravating factor of substantial experience in the practice of law applies as she has been a member of the Maryland Bar since December 2001. We agree.

### 6. *Likelihood of Repetition*

The hearing judge concluded that Bar Counsel proved a likelihood of repetition of misconduct by Ms. King because of her history of being sanctioned previously for violations of many of the same rules at issue here and because her misconduct spanned multiple clients and matters. The record supports the hearing judge's findings.

Ms. King argues that certain aspects of the misconduct at issue are unlikely to be repeated because she has adopted changes to her practice, including implementing a case management system and leading regular reviews of cases with staff. She also stated at oral argument that she would be willing to take on a mentor and take any continuing legal education courses the Court concludes she should take. To be sure, Ms. King's new office practices are a positive development. Her openness to a practice mentor and to taking appropriate continuing legal education courses is also welcome, although it would be more convincing if she had already taken steps toward both, as opposed to waiting for them to

28

be required as a component of a sanction. In any event, although Ms. King has taken positive steps, the record supports the hearing judge's finding concerning the aggravating factor of likelihood of repetition. Ms. King's exception is overruled.

## C. The Sanction

Citing *Attorney Grievance Commission v. Hamilton*, 444 Md. 163 (2015), and *Attorney Grievance Commission v. Garrett*, 427 Md. 209 (2012), Bar Counsel recommends that we disbar Ms. King. Ms. King recommends a suspension stayed in favor of a term of probation.

The cases on which Bar Counsel relies involve conduct that was more severe than here. In *Hamilton*, the attorney showed a disregard for timely filing documents and a disregard for his clients' wishes. 444 Md. at 199-200. We highlighted, however, that "most significantly" and "[m]ost intolerably," he misappropriated client funds and misrepresented his actions to his clients. *Id.* We found no mitigating factors. *Id.* And in *Garrett*, the attorney failed to communicate with clients, improperly converted unearned fees, and failed to return the fees. 427 Md. at 227-28. The attorney failed to respond in any way to the disciplinary proceedings, and he offered no evidence of remorse or mitigation. *Id.* at 228.

Ms. King's actions, although negligent, sustained, and repeated, do not rise to the level of the misconduct in *Hamilton* or *Garrett*. There is no suggestion in this record of a dishonest or selfish motive and Ms. King proved significant mitigating factors. In particular, we do not take lightly the suffering that Ms. King endured because of domestic violence. Such violence affected her physically and emotionally, and we do not rule out

29

the possibility that it contributed to some aspects of her misconduct. *See Attorney Grievance Comm'n v. West*, 378 Md. 395, 408-09 (2003) (mitigating, in part, due to attorney's concurrent hospitalization).

We conclude that an indefinite suspension is the appropriate sanction. Our cases are replete with similar conduct leading to this sanction, particularly in cases where an attorney failed to cooperate with Bar Counsel combined with violations not involving dishonesty. *See Attorney Grievance Comm'n v. Green*, 441 Md. 80, 101-02 (2014) (collecting cases); *Attorney Grievance Comm'n v. Kirwan*, 450 Md. 447, 466 (2016) (citing *Green* for the proposition that "where the attorney's disciplinary violations do not involve dishonesty, the sanction has often been indefinite suspension"); *see also Attorney Grievance Comm'n v. Moore*, 447 Md. 253, 265, 274 (2016) (suspending indefinitely an attorney with prior similar misconduct, and highlighting that it was "necessary" for him "to stop practicing law while he resolves his personal issues[,]" including severe emotional issues stemming from, among other things, domestic violence).

It is also appropriate sometimes to state a minimum "sit out" period that an indefinitely suspended attorney must wait before applying for reinstatement to the Bar. *See, e.g.*, *Green*, 441 Md. at 102. And, often, we impose conditions on an attorney's ability to reapply, including a requirement to engage a practice monitor. *See Attorney Grievance Comm'n v. Taniform*, 482 Md. 272, 325-26 (2022) (imposing an 18-month sit out period with conditions that the attorney (1) was approved by a mental health professional and (2) engaged an attorney monitor for a one-year period upon reinstatement). Ms. King shall have the right to apply for reinstatement six months from her date of suspension. *See*

30

*Olszewski*, 441 Md. at 271 (imposing a sanction of indefinite suspension with the right to reapply after six months in the case of a similar conflict of interest in violation of Rule 1.7). A condition of her reinstatement shall be agreement to a probationary period of not less than one year that will include a practice monitor and other appropriate conditions.

The suspension will commence 30 days after the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MARNITTA LANETTE KING.**

31